**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 12, 2024

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 12, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re Disciplinary Proceeding Against | ) | |
| | ) | No. 202151-4 |
| STEPHEN KENNETH MONRO, | ) | |
| | ) | En Banc |
| Attorney at Law, WSBA #26075 | ) | |
| | ) | Filed: <u>September 12, 2024</u> |
| | ) | |

OWENS, J.— Stephen Kenneth Monro is a Washington attorney facing discipline related to converting client funds, among several other charges. After an evidentiary hearing, the hearing officer recommended disbarment. The Washington State Bar Association (WSBA) Disciplinary Board (Board) remanded the matter to the hearing officer to clarify unspecified findings and conclusions and to conduct a proportionality review. This case asks us to determine whether the Board had the authority to order this remand and, if so, whether that authority was properly exercised here. The Rules for Enforcement of Lawyer Conduct (ELCs) do not expressly grant the Board this power and we have never addressed this issue. The Board may be able to remand in certain circumstances under its power to perform functions necessary and proper to carry out its duties. However, we hold that the Board's remand here was not proper because the hearing officer's findings and conclusions were adequate for appellate review and the Board's order itself was impermissibly vague.

FACTS

Stephen Monro was admitted to the bar in Washington in 1996. At all times relevant to this case, he worked as a personal injury lawyer. Monro was solely responsible for making disbursements from trust accounts, which he maintained for the deposit of client funds.

The WSBA Office of Disciplinary Counsel (ODC) was made aware of an overdraft of Monro's trust account, after which it opened a grievance and started an investigation. Shortly thereafter, one of Monro's clients also filed a grievance. Following the investigation, ODC formally charged Monro with 14 counts of misconduct. The charges centered around Monro's mishandling of trust account funds. Specifically, he was charged with (1) using and converting the funds of at least six clients, (2) failing to deposit and maintain client funds in a trust account, (3) failing to deliver funds promptly to clients, (4) using one client's funds on behalf of a different client, (5) failing to provide billing statements to clients, (6) failing to provide written statements in contingent fee matters, (7) failing to provide accountings after disbursing funds from the trust account, (8) charging unreasonable fees, (9) commingling lawyer funds with client funds, (10) failing to keep adequate records, (11) lying to ODC, (12) making false statements to clients, (13) making false statements to third parties, and (14) using and converting client funds owed to third parties.

The hearing officer conducted a seven-day evidentiary hearing. Fifteen witnesses testified, and the parties submitted more than 10,000 pages of exhibits. After the hearing,

the hearing officer issued 258 findings of fact, 14 conclusions of law, and recommended that Monro be disbarred. For example, the first conclusion of law states, "By using and converting client funds of SW, TC, KF, SA and the Estate of JK, the Respondent violated RPC 1.15A(b), RPC 8.4(b), RCW 9A.56.020, RPC 8.4(c), RPC 8.4(i)." Decision Papers (DP) at 32. The hearing officer applied the American Bar Association's *Standards for Imposing Lawyer Sanctions* to determine the presumptive sanction and analyzed mitigating and aggravating factors before making a recommendation. The hearing officer's decision did not discuss whether this sanction was proportional to sanctions imposed in similar attorney discipline cases. ODC moved to amend the decision to correct several typographical and other minor errors. The hearing officer then issued an amended decision, incorporating the majority of ODC's suggestions.

Monro appealed to the Board. Monro argued that the hearing officer's decision was insufficient for meaningful appellate review. Essentially, Monro argued that each finding had to list the specific evidence it relied on, explain how that evidence met each element of the offense, and rebut any available defenses. ODC countered that the hearing officer's decision complied with precedent, which simply requires a decision to have "the formal complaint, findings of fact, conclusions of law indicating violations of specific RPC provisions weighing a presumptive sanction under the ABA standards, the weighing of aggravating and mitigating factors and a recommended sanction." Pet. for Rev., App. at 61.

After oral argument, the Board remanded to the hearing officer to clarify the findings of fact and conclusions of law, and to consider the proportionality of the hearing officer's

recommended sanction. The Board did not specify which findings and conclusions needed to be clarified, nor did it describe the level of specificity it required. One board member dissented, agreeing with the remand but stating that a new hearing officer should complete the revision.

ODC and Monro filed cross petitions for review. We granted review solely on the issue of the Board's decision to remand to the hearing officer for clarification and a proportionality review.

ISSUE

Was the Board's order remanding to the hearing officer to clarify its findings of fact and conclusions of law and to consider proportionality proper?

ANALYSIS

This court "has exclusive responsibility in the state to administer the lawyer discipline and disability system and has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline." ELC 2.1. In 2002, we adopted the ELCs. The ELCs outline the procedures for conducting disciplinary proceedings when a lawyer has committed misconduct. Disciplinary counsel investigates the misconduct, after which the disciplinary committee may order a hearing to be conducted by a hearing officer. ELC 2.5(a). After the hearing, the hearing officer files "a decision in the form of findings of fact, conclusions of law, and recommendation." ELC 10.16(a).

If a party appeals the hearing officer's decision, it goes to the Board for review. ELC 11.2(b)(1). The Board reviews findings of fact for substantial evidence and reviews conclusions of law and the hearing officer's recommendation de novo. ELC 11.12(b). After its review, the Board "may adopt, modify, or reverse the findings, conclusions, or recommendation of the hearing officer," or "direct that the hearing officer hold an additional hearing on any issue, on its own motion, or on either party's request." ELC 11.12(d).

The issue in this case stems from the Board making a decision that does not fit neatly into any of the categories of actions it is permitted to take per ELC 11.12(d). Here, the Board issued a remand order, directing the hearing officer to clarify the findings and conclusions and to consider proportionality. We hold that while the Board may have the authority to remand under certain circumstances, the Board's remand order was improper in this case.

The ELCs do not explicitly authorize the Board to remand for clarification and consideration of proportionality; however, they do grant the Board broad general authority. The rules allow the Board to "perform[] the functions provided under [the ELCs], delegated by the Supreme Court, or *necessary and proper to carry out its duties*." ELC 2.3(a) (emphasis added). One of the Board's duties is to review decisions of the hearing officer. Thus, if the Board required clarification from the hearing officer to properly review a decision, this rule may authorize it to enter a remand order like the one here.

5

However, here, the Board's remand was not necessary to carry out its duty of reviewing the hearing officer's decision. A hearing officer's decision must include findings of fact, conclusions of law, and recommendations. ELC 10.16(a). This court previously stated that hearing officers are required to clearly indicate in their findings "(1) the formal complaint; (2) findings of fact; (3) conclusions indicating violations of specific provisions of the Rules of Professional Conduct; (4) the sanction suggested by the ABA *Standards*; (5) weighing of any aggravating or mitigating factors, based upon the ABA *Standards*, considered in determining what sanction to recommend; and, (6) the sanction recommended." *In re Disciplinary Proceeding Against Johnson*, 114 Wn.2d 737, 745, 790 P.2d 1227 (1990). We will not disturb a hearing officer's findings of fact if they are supported by a clear preponderance of the evidence. *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 483, 998 P.2d 833 (2000). Findings of fact "should state ultimate conclusions, not recite the evidence." *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 760, 801 P.2d 962 (1990). We have acknowledged that disciplinary proceedings are "'not in the nature of an appellate review as that term is generally understood.'" *In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 521, 663 P.2d 1330 (1983) (quoting *In re Disciplinary Proceedings Against Sherman*, 58 Wn.2d 1, 8, 354 P.2d 888 (1960)). Disciplinary proceedings are "neither civil nor criminal but are sui generis hearings to determine if a lawyer's conduct should have an impact on the lawyer's license to practice law." ELC 10.14(a).

6

The hearing officer's findings and conclusions here are adequate for meaningful appellate review. The decision contains 258 findings of fact, 14 conclusions of law, and recommendations as to the sanction Monro should receive, satisfying ELC 10.16(a). The decision also contains everything that is required under *Johnson*. It identifies the formal complaint, contains findings of fact, includes conclusions of law that state specific provisions of the RPCs Monro violated, contains presumptive sanctions for each count based on the ABA *Standards*, identifies and weighs the aggravating and mitigating factors, and finally states the officer's recommended sanction of disbarment based on all of the above. Monro argues the conclusions of law are "defective" because they cite several RPCs and statutes without reciting the text of the rules or statutes or their specific elements, they do not state which clients' cases involved what criminal conduct, and they do not identify the evidence in the record that supports each conclusion. However, nothing in the rules or our precedent requires a hearing officer's conclusions to contain any of that information.

Based on a review of the hearing officer's findings and conclusions and the record in this case, the decision contained enough detail for the Board to determine if the conclusions were supported by the findings and the findings were supported by substantial evidence. For example, finding of fact 141 states that Labor and Industries (L&I) issued an "Order and Notice" stating that Monro's client SA was "required to reimburse L&I the sum of $26,000 from her $100,000 settlement." DP at 74. Finding of fact 155 states that "Respondent did not promptly pay L&I's $26,000 lien," DP at 75, and

finding of fact 156 states that "L&I called Respondent several times and left messages requesting payment." DP at 75. Findings of fact 157, 160, 161, and 166 state that Respondent issued checks to L&I in installments over a period of five months despite having been authorized to pay the L&I lien in full by SA. DP at 76-77. These findings support the conclusion of law for count 3, which states that "[b]y failing to promptly deliver funds to third persons, such as L&I liens in TC and SA's cases, which they were entitled to receive, Respondent violated RPC 1.15A(f) and RPC 1.3." DP at 88. Just as this court is able to verify these findings on the record provided, so the Board is able to perform adequate appellate review without remanding to the hearing officer.

Monro also claims that the hearing officer's findings were inadequate as they failed to explicitly find the mental state required for theft, and he claims this failure requires remand. However, the hearing officer did make findings about Monro's mental state. The hearing officer's decision contained several findings that Monro used client funds "with the intent to deprive" and a finding that Monro knowingly testified falsely at his deposition. DP at 66, 70, 73, 79, 82, 86. While Monro cites two cases that he claims dictate the outcome in this case—*In re Disciplinary Proceeding Against Anschell*, 149 Wn.2d 484, 69 P.3d 844 (2003), and *In re Disciplinary Proceeding Against Placide*, 190 Wn.2d 402, 414 P.3d 1124 (2018)—in both of those cases, the hearing officer did not enter any findings of fact about the attorney's mental state. Therefore, this case is easily distinguishable.

Additional considerations guide our decision about the Board's remand to consider proportionality. Not only do the rules not explicitly authorize this, but our case law appears to contemplate that the Board or this court will perform a proportionality analysis, not the hearing officer. If an attorney wants to argue their sanction is not proportionate, they may raise this issue to the Board or to this court. Several cases make clear that this court may consider proportionality as a factor in evaluating a sanction recommendation. *See In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 95, 667 P.2d 608 (1983) (setting forth proportionality as one of five factors to consider); *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 256, 66 P.3d 1057 (2003) (getting rid of several *Noble* factors but retaining proportionality). We have also stated that the Board can consider proportionality on an attorney's request. *In re Disciplinary Proceeding Against Marshall*, 167 Wn.2d 51, 89, 217 P.3d 291 (2009). We have never indicated that the hearing officer should consider proportionality. Here, the hearing officer properly analyzed the presumptive sanction for each violation using the ABA *Standards* and considered aggravating and mitigating factors. Because proportionality is an argument that can be made to the Board or this court on appeal, the Board's remand for consideration of proportionality was improper.

Additionally, the Board's remand was improper because its remand order lacked specificity. The Board's order simply stated that the hearing officer's decision "is remanded . . . for revision, to clarify the findings of fact and conclusions of law, and to consider the proportionality of the recommended sanction." DP at 96. In *Kamb*, we

9

stated that counsel for the appellant must present argument as to why specific findings of fact are not supported by the evidence. *In re Disciplinary Proceeding Against Kamb*, 177 Wn.2d 851, 861, 305 P.3d 1091 (2013). In other words, we require parties to identify the findings with which they take issue and state what that issue is. We require the same level of specificity from the Board as we do from respondent lawyers. Just as this court needs specificity from parties to assess the merits of their arguments on appeal, the hearing officer needs specificity from the Board on remand to understand which findings or conclusions need to be rewritten and what they need to be rewritten to include.

We hold that the Board's remand order was improper because the hearing officer's decision was adequate for meaningful appellate review and the Board's remand order itself was deficient.

CONCLUSION

The Board may be able to remand to a hearing officer if a decision is particularly deficient. However, in situations like this, where a hearing officer's decision is adequate for meaningful review, remand is improper. Moreover, if the Board chooses to remand, it must be specific in its order and must identify the defects in the decision that the hearing officer is to fix. We reverse and remand to the Board for review of the hearing officer's decision.

WE CONCUR:

_____
Owens, J.

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.